ELLIS, Judge.
This suit was instituted by plaintiff seeking recovery of damages as a result of an assault and battery allegedly committed by the defendant, Fred Levy. From a judgment in favor of the plaintiff in the sum of $300.00 for pain and suffering, and $191.50 for medical expenses as a result of the battery the defendant has appealed and the plaintiff has answered the appeal, seeking an increase in the amount of the award.
The lower court in its written reasons gave a detailed review of the testimony adduced on the trial. We find the facts necessary to a decision in this case to be substantially supported by the evidence. Around midnight, September 8, 1962, the car in which the plaintiff was riding as a guest passenger, together with the driver and one other male companion, struck a light pole in front of the defendant’s residence, knocking it down. This caused quite a bit of confusion which was evidently added to by the condition of the occupants of the car. The alleged driver was drunk and was later arrested and charged with such driving, and as we are in entire accord with the findings of the lower court that the plaintiff "had more to drink than she admitted, and further believes that she was raising a racket and the record that this woman has for disturbing the peace and other acts of violence of this order further convinces the court that she was in character.” There was absolutely no testimony but that the cause of the accident was due to the drunken condition of the driver. Whether the defendant was enraged because his television had been interrupted, a fact which he emphatically denies, and, on the contrary, stated he had gone to bed at 10:30 P.M. after looking at television and was asleep, in which he is corroborated by his wife, the fact remains he did get his pistol and go out to investigate the disturbance. The plaintiff apparently was making quite a bit of fuss in an attempt to get her two male companions back in the car and away from the scene but prior thereto defendant had *390 sent his wife to call the police. The car refused to start and the defendant told them, “You wine heads is done raised a lot of hell here and now you want to run away.” This evidently enraged the plaintiff and defendant testified she began cursing him and “come around up on the sidewalk where I was and did cut me.” We do not believe from the record the defendant has borne the burden of proof sufficiently to show the plaintiff had any weapon in her hand or that he received a cut. It was at this time he struck her with the pistol twice, inflicting each time a wound on the side of her head which necessitated suturing. We fail to find any evidence in this record to substantiate the defendant’s allegation of justification for his assault and battery. There is no doubt in our mind but that plaintiff was cursing and possibly advanced toward the defendant after he had called them wine heads but there is no corroborative proof she struck him or attempted to cut him, as no one saw any weapon in her hand.
The hospital bill is proven. The plaintiff was taken to the emergency room of the Baton Rouge General Hospital and was seen by Dr. H. D. H. Olinde and his findings are contained in the letter introduced by consent of all counsel in the record. He stated “examination by me at this time disclosed two lacerations of the scalp, both of these requiring suturing. A skull x-ray was made at this time but showed no evidence of fracture. Examination was otherwise within normal limits.” The plaintiff came into his office the next day, September 9, 1962, complaining of vomiting, headache and soreness in her head. The doctor stated his examination at that time, including neurological examination, was within normal limits. The plaintiff was given medication for vomiting and headaches and told to see him again on September 17th. Plaintiff returned on the latter date complaining of soreness in the region of the lacerations and stating she had passed out several times since her last visit on the 9th of September. Examination by the doctor showed no abnormalities except for the lacerations, “which were healing well. The sutures were removed * * * ”.
Apparently this was the last time she was seen by Dr. Olinde but this doctor had referred her to Dr. Harold M. Voss whose entire evidence is contained in a letter of November 13, 1962 introduced by stipulation of counsel. Dr. Voss saw the plaintiff on October 9, 1962 at which time she was complaining of “persistent pain and tenderness over the sites of trauma since the trauma, numbness and tingling in the left arm and leg since trauma, weakness in the left upper extremities with dropping of small objects frequently, weakness in the left knee with walking, report of seeing bright lights and having frequent vertigo since trauma.” This doctor really found nothing wrong with plaintiff at that time other than his “examination of the sites of trauma revealed swelling and tenderness .* * * ”. Plaintiff returned to see this doctor on October 22nd, 1962 and “her findings were essentially unchanged. It is my feeling that this patient has residual evidence of trauma to the left posterior tem-perol region with slight swelling and tenderness probably secondary to resolving hematoma. I was unable to find any other evidence of residual effects from the trauma.” He concluded, “Therefore I do not feel that this patient has a disabling injury at this time and that her tenderness and swelling over the site of the trauma are temporary and will resolve with time.”
The award of $300.00 for pain and suffering made by the lower court as stated in his written reasons was based upon the court’s feeling' that Mildred Carter was not injured “anyway nearly as badly as she apparently thinks she was, and the court further feels, although it is not proper to weigh certain things in reaching a figure for damages, it seems to the court that it would be proper in a case of wilful conduct by both parties to consider that as mitigating circumstances.”
Counsel for the plaintiff in argument and brief in stressing the answer to the appeal *391 seeking an increase in the award cites Fontenelle v. Waguespack, 150 La. 316, 90 So. 662, in which a plaintiff was assaulted without justification and the court awarded $1200.00 for the loss of three teeth in 1922, and held damages may he allowed in such cases not only for physical pain and suffering but for indignity and humiliation, and also that one who commits an assault and battery without provocation is liable for larger damages than if he had been provoked.
Counsel also cites Trahan v. Benoit, 139 La. 626, 71 So. 893, decided in 1916, wherein an award was made in the sum of $500.00 in which plaintiff had been knocked down by the defendant. The appellate Court in making the award stated:
“We are therefore of the opinion that, although plaintiff sustained no physical injury, he should be awarded damages for the injury to his feelings, by way of discouraging defendant, and others, from so readily and unlawfully availing themselves of their acciden (sic) of superior strength.”
Counsel argues that adopting the legal principle of judicial cognizance of the lowering of the value of the dollar, this judgment would now be worth at least $2500.00.
Be that as it may, the award of $500.00 was for humiliation or injury to plaintiff’s feelings in the cited case, whereas in the present case we do not believe this plaintiff suffered one iota of humiliation or injury to her feelings. We base this upon her past criminal record and behavior as shown by the evidence. She evidently was never humiliated by her past actions or many incarcerations.
The Waguespack case, supra, is not apposite factually for in that case the court stated the testimony showed “that plaintiff was suddenly attacked by defendant; that plaintiff was knocked down; that his nose was mashed, and bled for several days, and that the bleeding was stopped only by electric cauterization; that both of his eyes were blackened and closed; that the kick he received in the mouth shattered a set of false teeth, loosened an eye tooth to such an extent that it had to be extracted, and, as this eye tooth was the main support for the plate of false teeth, the remaining eye tooth and molar had to be extracted, so as to fit in the mouth a new plate; that the mouth was bruised and sore for several weeks; that plaintiff was compelled to remain in bed for three or four days after he was assaulted and beaten by defendant.” In the cited case plaintiff suffered a brutal beating whereas in the present case there were two wounds on the head which required suturing but there is no evidence whatsoever this woman suffered unduly, nor that she was given sedatives, nor any evidence by the doctors that these wounds were in any manner serious.
Considering all the facts in the case we will not disturb the award of the lower court and the judgment is accordingly affirmed at the cost of the defendant.
Affirmed.