169 So.2d 561 (1964)
Mrs. Daisy BENNETT, Wife of Adam DUET,
v.
Henry J. MONTAGNET.
No. 1597.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1964.
*562 Duke & Porterie, Neville M. Landry, New Orleans, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles, A. Morgan Brian, Jr., New Orleans, for defendant-appellant on appeal only.
Before McBRIDE, SAMUEL and TURNER, JJ.
McBRIDE, Judge.
Plaintiff, after a jury trial (prayed for by defendant), recovered judgment against defendant for $5,000.00 for damages for embarrassment, humiliation and physical injuries experienced and sustained as the result of a beating administered to her by defendant on the evening of September 9, 1962. The judgment was reduced to $3,000.00 on a motion for a new trial by defendant in which defendant alternately suggested "that the court * * * reform the jury verdict reducing it to $500.00." A new trial was denied and defendant appealed. Plaintiff answered the appeal praying that the amount of the judgment be restored to $5,000.00, but, whereas, the answer to the appeal was not timely filed, we shall give it no consideration.
Defendant in his answer denied he beat plaintiff; he alleged:
"* * * he used his key to open his front door at his premises No. 4670 Music Street for the sole purpose of trying to locate his paramour, Mrs. Adam Duet, also known as Miss Daisy Bennett, and also known as Miss Nell Bennett, who had disappeared and was incommunicado, in-so-far as he was concerned, for a period of about twelve hours, during which time he and she were supposed by arrangement to have been together; that he walked to the rear of his property and there he found Plaintiff in his bed alone; that she awoke and got out of bed; that he demanded, because he was supporting her and her two children by different marriages, that she explain to him in detail where she had been; that Plaintiff began giving him some cock and bull story which Defendant did not believe, and as a result he pressed her as hard as he could for an explanation of the truth; that she then told him it was none of his damned business and that he could go to Hell."
* * * * * *
*563 "That after the aforesaid expressions, Defendant called Plaintiff a worthless whore; that she immediately kicked him on his right shin and shoved her left hand in his face; that the pain was severe; that he then thereafter did have a scuffle with her to retaliate for the pain she caused him; that at no time did he use any unnecessary force that would cause her any pain beyond that which Defendant sustained."
The only evidence adduced at the trial emanated from plaintiff and her witnesses. Plaintiff was 29 years of age when the affair took place; she weighed 140 pounds and stood 5 feet 6 inches in height. Defendant, an owner of race horses, was 61 years old, weighed 190 pounds and was 6 feet 2 inches in height. The parties had been seeing each other almost daily, and plaintiff's testimony is to the effect that they contemplated matrimony as soon as she could obtain a divorce from her then husband. On the day in question, according to plaintiff, she was sleeping in her bed at the premises 4670 Music Street, New Orleans, which house is owned by defendant and was occupied by plaintiff and her sister. Plaintiff claims defendant lived elsewhere. Be that as it may, defendant called to see plaintiff and was admitted to the house by plaintiff's maid; he then proceeded to the bedroom where the plaintiff was sleeping. She testified defendant pulled her out of bed "and he was knocking me around." There is no need for further detailing the evidenceit shows plaintiff sustained a severe beating at the hands of defendant which necessitated her confinement to bed for a few days. A police officer summoned to the scene and a disinterested witness both testified plaintiff apparently had been badly beaten. Her attending physician (Dr. S. C. Lyons) testified:
"A. I would think it was a pretty good beating, I am unaccustomed to seeing people in that condition, but judging from the bruises around her shoulders and her face and her complaints, I would say that she had a pretty fair beating."
* * * * * *
"A. Yes, she had a redness on her cheek, her left shoulder and she was bleeding from her mouth."
* * * * * *
"* * * I arrived there in a question of minutes and found Mrs. Bennett sobbing and in a state of hysteria and moderate shock."
* * * * * *
"A. I gave her a hypodermic for pain, I gave her a hypodermic containing a sedative to make her sleep and I gave her a hypodermic that contained a tranquilizer, something like equinal."
Plaintiff remained under Dr. Lyons' care for some time, and his records show that the patient did not return to work until September 29, 1962. When the patient complained she still suffered pain in her jaw, Dr. Lyons referred her to Dr. A. J. Kreller, a dental surgeon.
Dr. Kreller testified he first saw plaintiff on April 17, 1963 and:
"* * * The X-rays showed apparent bone damage to the periphery of the socket that is traumatic in nature and about three months in duration."
* * * * * *
"I instituted treatment by inserting a splint to balance the bite better and give her a smoother motion of the condyle to overcome the damaged sockets. The patient showed vast improvement after treatment and on June 11, 1963 she could open her mouth and had only occasional pains. I have checked this patient periodically until the present time. She is comfortable and devoid of *564 pain at the present time. The permanent appliance that will be associated with this situation has not been inserted as yet and there has been no payment of fees to me at this time or any time. * * *"
* * * * * *
"Q. Doctor, is it your professional opinion that your clinical findings that you found after the examination of Mrs. Duet could be caused by a trauma?
"A. Yes."
From the testimony of Dr. Lyons and Dr. Kreller, it appears that the aggregate amount of their bills for services rendered plaintiff was $960.00.
Appellant's first contention is that the judgment should be reversed and the matter remanded to the trial court for a new trial. The brief filed in his behalf contains the following language:
"This appeal is by a man who, through no fault of his own, was deprived of his day in Court.
"Brought against this man, then 61 years old, was the tort suit of a 29-year-old woman who claimed damages for her alleged injuries and medical expenses said to have resulted from an alleged assault on her by him. He vigorously denies and can dispute this, but has not yet had opportunity to do so.
"Trial of the case below was conducted, before a jury, wholly during his absence and partly while his original attorney (not undersigned present counsel) was not even present.
"The jury's verdict and court's judgment thereon were rendered against the man without any defenses, evidence, witnesses, or even his own testimony having been presented on the merits.
"All he asks for here is a chance to be heard, to address himself and his evidence against this highly controverted and defensible claim, and at least to have the privilege of being passed upon personally by his peers, the jury. He full well realizes that he may have no strictly legal grounds on which to demand or justify such relief. So, with sincere humility and utter dependence on this Court's sense of equity, fair play, and desire that full justice be done in all matters, he pleads for remand of the case for new trial. Alternatively, he seeks further reduction of the judgment's quantum."
This suit was filed November 7, 1962, and a preliminary default was entered against defendant December 20, 1962. On the following day defendant filed an exception of no cause or right of action, which was overruled January 11, 1963. Defendant's answer was not filed until March 4, 1963.
Several pre-trial conferences attended by the attorney for plaintiff and the then attorney for defendant were held, and the case was fixed for trial February 28, 1964 and duly posted on the bulletin board.
On the day set for the trial when the case was called, neither the appellant nor his then attorney made appearance in court. The plaintiff, the witnesses she had subpoenaed, her counsel, the jury panel, and the presiding judge (Cassibry) waited for defendant and his attorney to appear. The judge then received a telegram from defendant's then attorney requesting a continuance of the case; the attorney never appeared. The continuance was granted.
The case was again fixed for trial on May 6, 1964 and duly posted according to the rules of court. When the case was called on that date, again defendant and his then attorney were absent. Before proceeding with the trial the judge (Bailes) dictated the following into the record:
"This case was regularly fixed on April 8th, 1964 for trial on this date on *565 the merits, and the calendar was regularly published and posted in the court.
"The Court attempted to contact the defendant's counsel, Mr. * * * several times during the previous week, and in doing so made several telephone calls to his office but no answer was received at his office.
"The case is therefore being called for trial this morning and neither the defendant nor his counsel is present."
The matter then proceeded to judgment. After two plaintiff witnesses had been examined, the crier of the trial court located defendant's then attorney in the courthouse and brought him before the trial judge. The attorney then endeavored to contact the defendant by telephone but was unable to do so. However, the attorney remained in the courtroom and cross-examined the witnesses who subsequently testified; he also argued defendant's side of the case to the jury.
Defendant subsequently employed other counsel and filed a rule for a new trial on several grounds, one of which was that defendant had been deprived of his right to a fair and impartial trial because his then attorney of record failed to advise him that the case had been fixed for trial on May 6; that the then attorney of record failed to subpoena any witnesses or to call any, that the defendant was present in the City of New Orleans and available for testimony, and that his then attorney made no defense to the evidence offered by plaintiff.
After a hearing on the rule a new trial was refused, but the court ordered the judgment reduced to $3,000.00 as aforesaid. Judge Bailes dictated the following comments into the record:
"Gentlemen, I would like to make a statementthis case was regularly called on the morning of the 6th and Mr. * * * was not present nor was the defendant and after the case had progressed for approximately 45 minutes and two witnesses had been heard The Court Crier notified me that Mr. * * * was in the hall some distance from the courtroom where the case was being heard. Upon being notified by The Court Crier of this situation I told him to go immediately and bring Mr. * * * to me which The Court Crier did at which time I advised Mr. * * that the case was in the process of being tried and at that time he attempted as far as I know to get ahold of Mr. Montagnet, the defendant, and he did try to do so numerous times but what number he dialed I have no way of knowing. After several attempts to reach Mr. Montagnet, he advised me that he was unable to contact the defendant, finally telling me that he contacted someone and the defendant was out of town and we then proceeded with the trial at which time he again Advised The Court that Mr. Montagnet was out of town. I saw in the courtroom a gentlemen who Mr. * * * brought in and who was present in the courtroom but did not identify himself nor was he identified by Mr. * * * and I am sure that that person being Mr. Murphy (defendant's office assistant) also heard the defendant counsel advise The Court that the defendant was out of town which I understand was not a fact." (Words in brackets ours.)
Appellant's counsel direct our attention to LSA-C.C.P. art. 1973 which provides a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. They argue that this court should grant the relief appellant seeks under the facts surrounding the trial. They point out that in many cases in order to accomplish substantial justice, new trials have been granted where party litigants have been absent or had inadvertently failed to do what was required of them by the law. We are cited to several authorities; however, these may be distinguished from a factual standpoint from the instant case.
We do not think that there was any abuse of discretion by the lower court in *566 rejecting the motion for a new trial in the instant case. It seems to us that the defendant not only had his day in court but had two days. On both occasions, the case had been regularly posted for trial in accordance with the rules of court, and this constituted notice to the world that the case was fixed to be heard. Why defendant and his counsel were absent on the first date and why defendant's counsel requested the continuance is unexplained. Why the parties did not appear on the second date fixed for the trial is also shrouded in mystery.
Appellant's counsel argues that the equities of the matter weigh heavily in favor of appellant, but with this we do not agree. The plaintiff is also to be considered in the matter. She, her witnesses, especially her physician and dentist, as well as her counsel, were present in court and ready to try the case on both occasions. The court on both dates waited in vain for the appearance of defendant and his then attorney. We believe that if a case were to be reopened or a new trial granted every time counsel or a litigant neglected to make appearance in court, it would lead in many, many instances to absurd results. We think it is better in this case to have a seeming injustice done to the defendant rather than to prejudice the rights of plaintiff. If, as appellant claims, his attorney was derelict in the duty of notifying him of the setting of the case for trial, such dereliction must be imputed to appellant, and he must suffer the consequences.
This case is analogous to Ford v. Williams, La.App., 62 So.2d 838, wherein our brothers of the First Circuit said:
"As to the failure of the lower court to grant a new trial, defendant alleges error because neither defendant nor his counsel were present below, and defendant now claims that he can give positive evidence that defendant did not strike the blow which caused the injuries complained of. As to the absence of defendant and his attorney from the trial below, they have given no valid excuse. Defendant claims that he understood that the matter was about to be compromised and would not be tried. There is nothing in the record to justify such belief. The case was regularly set for trial for February 1st, 1952, and the defendant admits that he was duly notified of such. The case was called and some delay was allowed to give defendant an opportunity to appear. When he and his counsel failed to appear, and petitioner stated that he was ready to proceed, the trial commenced. The absence was due entirely to the neglect of defendant and would not warrant the granting of a new trial."
Appellant alternatively contends that the judgment should be reversed because of defective and incomplete instructions given by the court to the jury. When the appellate court has all the facts before it and is passing on the merits of the case, it will not notice irregularities in the charge to the jury. Although the judge has charged improperly, yet if the evidence would not have authorized a different verdict, it will be upheld. Dart's New Louisiana Digest, Volume 2, page 702, § 653. The jury could have rendered no other verdict in this case in view of the evidence presented to it.
Appellant also alternatively contends that the $3,000.00 award is grossly excessive and should be reduced substantially. We do not think so. The plaintiff sustained painful and serious injuries and incurred considerable expense for the treatment thereof, and we think the amount she recovered could under no circumstances be considered excessive.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.