BARNETTE, Judge.
This suit was instituted by plaintiffs seeking recovery of damages as a result of assaults and batteries allegedly committed by defendant, Orest Pena. From a judgment in accordance with a jury verdict in favor of plaintiff Margaret Davis for $5,450, which includes a sum of $82.95 for medical expenses, and a judgment in accordance with a jury verdict in favor of plaintiff Marlene Smith for $5,450, which includes $47 medical expenses, the defendant has appealed. Plaintiffs also appealed, devolutively, seeking an increase in the awards.
Defendant and his wife, Eugenia B. Pena, are the owners in partnership of a barroom known as the Greek Club at 233 Decatur Street in the City of New Orleans. At the time of the incident plaintiff Marlene Smith was employed as a barmaid to serve drinks and wait on customers in the establishment.
The record reveals that during the early morning hours of November 28, 1966, Marlene Smith was acting in the scope of her employment serving drinks to a. number of customers in the establishment, principally Greek seamen. Plaintiff Margaret Davis, the roommate of Miss Smith, was present in the barroom. At this time de *596 fendant and his wife were at their home at 117 Decatur Street, a block away from the establishment. A disturbance arose in the barroom involving the breaking of glasses. One of the women patrons of the bar went to defendant’s home and informed him of the disorder. Defendant immediately set out for the bar with his wife following shortly thereafter.
Upon arrival at the establishment, defendant sought to gain information from Marlene Smith as to how the glass was broken but was met by her denial of any knowledge of the breakage. Defendant seated himself at the front of the bar, apparently to observe any rowdiness that might take place. A dispute arose between defendant and plaintiff Smith over defendant’s accusation of Smith’s stealing money from the cash register. An argument ensued, the result of which was that Marlene Smith was fired. Defendant then proceeded to his office to obtain funds to pay off plaintiff Smith.
At this point defendant’s wife entered the establishment and became engaged in an argument with the plaintiffs. Upon return from the office, defendant joined the verbal affray. There is conflicting testimony as to what events transpired next. Plaintiffs contend that defendant told his wife to hit Marlene Smith and when she refused he began to strike with his fists first plaintiff Smith and then plaintiff Davis. Defendant contends that when he returned from his office he observed plaintiffs “pushing” his wife, and being fearful of possible harm to her, he “shoved” the plaintiffs away. In any event, it is evident from the record that defendant did strike the plaintiffs with his fists causing plaintiff Davis to fall and strike her head against a table.
The plaintiffs were young women about 18 (Miss Smith) and 19 (Miss Davis) years of age. Both had been married — plaintiff Smith twice and plaintiff Davis once— and at the time of the incident in question and at trial were living as single women. Neither seemed to have clear knowledge of her divorce. Plaintiff Smith’s alleged second husband returned to his ship at sea about a week after their marriage and was never seen by her again. Both young women had followed a career of employment as barmaids for some time and had worked in Houston, Galveston and New Orleans. Their weekly wages were approximately $60 plus tips. At the time in question plaintiff Davis was unemployed and was living with plaintiff Smith who occupied a room which she rented from defendant over the bar.
Plaintiff Davis was knocked down or off balance by defendant and fell to the floor, striking her head on a table. She claims she was rendered unconscious by the blow and did not regain consciousness until she arrived at Charity Hospital. We think she was probably dazed by the blow and fall, but quickly recovered her senses sufficiently to walk out of the bar with the assistance of her friend Gloria Zou-bantis, who took her to the hospital in her car. While plaintiff Davis was being assisted by Miss Zoubantis, plaintiff Smith went to the bar next door to summon the police. After calling the police, plaintiff Smith went to the hospital to see about her friend Margaret Davis and found her in the emergency room “drowsy.” X rays were taken of Miss Davis and she was given some kind of shot or pill and was released.
The plaintiffs then joined their attorney at a barroom next door to defendant’s establishment. A notarized statement describing plaintiffs’ version of the incident was drawn up by the attorney and signed by several patrons who were present in defendant’s place when the incident took place. However, two of the young women who admitted signing the statement, Nora Y. Bouganim and Gloria Zoubantis, testified that they signed the document solely as witnesses to its existence and not as to the truth and veracity, of its contents.
The defendant’s attempt to justify the assaults on the two young women as being *597 in defense of his wife does not seriously impress us. The scene was one of confusion punctuated by obscene epithets directed by defendant toward the plaintiffs and' returned in kind by them. The only wonder we have is that a more general brawl did not ensue involving the seamen and the other drinking patrons and young women in the place at that hour of the morning.
We will not disturb the jury’s verdict in finding that assaults were committed by defendant upon the plaintiffs for which they are entitled to awards for damages. It is our opinion, however, that the injuries were hardly more than superficial and justify only minimal awards. The awards of the jury were grossly excessive and must be reduced materially. In the first place, it is difficult to reconcile the two awards of exactly the same amounts, including different amounts for the respective medical expenses. Furthermore, it appears that the injury to plaintiff Margaret Davis was perhaps a little more serious than that inflicted upon plaintiff Marlene Smith.
We will not indulge in speculation in an attempt to find a reason, but it is apparent to us that the jury was prejudiced against this defendant and made awards so out of proportion to just compensatory damage as to be punitive in nature.
Both plaintiffs were referred by their attorney to Dr. Julius Isaacson, Jr., who saw them initially the day after the incident in question. Dr. Isaacson testified that examination of plaintiff Davis revealed “a large hematoma present over both eyes, * * * an area on the bridge of the nose with an avulsion of the skin” and a laceration inside the nose “ * * * which appeared to be a source of bleeding that the patient complained of.” There were no other clinical findings and X rays taken upon his referral by Dr. Joseph Hopkins were negative for fractures. His conclusion was stated as follows:
“It was my opinion Miss Davis suffered a brain concussion or cerebral concussion, multiple hematomas of the face and abrasions of the face.”
Upon further questioning he explained his diagnosis of “concussion” as not being severe enough to cause localizing symptoms but sufficiently traumatic to cause headache. He did not see the need for referral to a neurosurgeon.
Treatment consisted of antibiotics and anti-inflammatory medication. She was given tablets known a oral Varidase to absorb the hematomas, a mild analgesic and pain-relieving nonnarcotic prescription.
Dr. Isaacson saw plaintiff Davis a total of four times, the last visit to his office being December 15, 1966, less than three weeks after the assault. She then showed “a great deal of improvement” and was “relatively asymptomatic.” He said: “In other words, she didn’t complain of any specific complaint and the skin lesions had pretty well cleared up.” He rendered a bill for $25 for his treatment.
Dr. Isaacson’s examination of plaintiff Smith involved the head only and revealed swollen upper and lower lips, “ * * * a laceration and hematoma on the upper lip with the same present but not so severe to the lower lip. There were lacerations on the mucosal, which is the inner surface of the lips.” X rays were negative. Treatment consisted of drugs to decrease the swelling of tissues and to absorb the hema-toma. He also prescribed a mild narcotic for pain relief. He saw her four times and rendered a bill for $27 for treatment.
Color photographs taken by plaintiff’s attorney on November 29 and introduced in evidence show the abrasion on the bridge of plaintiff Davis’ nose and a slightly swollen upper lip of plaintiff Smith. Dr. Isaacson testified that plaintiff Smith’s lip was not nearly as swollen at time of trial. His examination in the courtroom revealed a non-visible scar described as “little white lines” inside the lip. He was asked specifically about “residual” and said he found none.
*598 There was no other medical testimony and the medical expenses in the amounts of $82.95 for plaintiff Davis and $47 for plaintiff Smith are either stipulated or not contested.
We are well aware of the jurisprudential guidelines set out by the Supreme Court in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballanga v. Hymel, 247 La. 934, 175 So.2d 274 (1965); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). We are fully cognizant of the Supreme Court’s admonition of caution to the Appellate Courts in their review of the issue of quantum of damage in tort cases. It is our opinion that this is a glaring example of abuse of the “much discretion” vested in the trial jury in assessing damages. Our review of all the facts arid circumstances, which we have adequately stated above, convinces us that the ends of justice will best be served by a reduction in the quantum of damages of each plaintiff.
We have considered the amounts of awards in other cases only so far as they are relevant to the question of abuse of the “much discretion” of the jury. The following cases are pertinent to this consideration : Bauman v. Heausler, 188 So.2d 189 (La.App.3d Cir. 1966) ; Baughman v. Wells, 171 So.2d 759 (La.App.2d Cir. 1965); Duet v. Montagnet, 169 So.2d 561 (La.App.4th Cir. 1964) ; Rivers v. Brown, 168 So.2d 400 (La.App.3d Cir. 1964); Carter v. Levy, 160 So.2d 389 (La.App.lst Cir. 1964); Carter v. Harris, 144 So.2d 472 (La.App.4th Cir. 1962).; Azevedo v. Frasca, 128 So.2d 274 (La.App.1st Cir. 1961) McMahon v. McDonald, 90 So.2d 692 (La.App. Orleans 1956).
It is not our purpose in fixing the awards of damages in this case primarily to maintain a semblance of uniformity with other cases, for we realize that all cases differ in certain aspects. It is our opinion, as stated above, that the injuries to these plaintiffs were superficial, of very temporary duration and left no residual. Accordingly, we will reduce the award to plaintiff Davis from $5,450, including medical expense, to $750 plus medical expense of $82.95, and the award to plaintiff Smith from $5,450, including medical expense, to $500 plus medical expense of $47.
The judgment appealed from is therefore amended so as to grant judgment in favor of plaintiff Margaret Davis against defendant, Orest Pena, in the full sum of $832.95 with legal’ interest from judicial demand and amended so as to grant judgment in favor of plaintiff Marlene Smith against defendant, Orest Pena, in the full sum of $547 with legal interest from date of judicial demand. As thus amended, and in all other respects, it is affirmed at defendant-appellant’s cost.
Amended and affirmed.