REGAN, Judge.
The plaintiffs, Mr. and Mrs. Leopold Flores,[1] filed this suit against the defendants, John Fatsis and Indiana Lumbermen’s Mutual Insurance Company, his insurer, endeavoring to recover the sum of $114,-000.00 for injuries which they asserted were incurred by Mrs. Flores as the result of a fire which occurred in a bar and restaurant located in 127 Decatur Street in the City of New Orleans. The plaintiffs’ suit was predicated upon the fault of the defendant owner who neglected to provide a secondary means of egress from the premises in conformity with the requirements of La.R.S. 40:1580.
The defendants answered and admitted the fact that the principal defendant had leased the premises to the plaintiff. However, they denied that they were liable to the plaintiff and specifically pleaded the defense of “assumption of risk”.
The case was tried before a jury, which returned a verdict in favor of the defendants, dismissing the plaintiff’s suit. From the judgment rendered in conformity with this verdict, the plaintiff has prosecuted this appeal.
The record discloses that in the' early morning hours of June 4, 1964, a fire occurred in 127 Decatur Street, which, to reiterate, was leased by the plaintiff from the defendant. The premises were composed of a bar and restaurant located on the second floor of the building, and there were sleeping quarters in the rear thereof. The defendant concedes that there was only one means of egress from the building which, of course, violated the provisions of La.R.S. 40:1580, which requires at least two such exits in property of this kind.
The fire occurred in the area of the only exit while the plaintiff was asleep, and she sustained rather severe burns over a large portion of her body when she endeavored to escape from the building.
The plaintiff’s initial knowledge of the condition of the premises was obtained in her capacity as an employee of the defend *586 ant, who operated this bar and restaurant prior to the time when she assumed the proprietorship thereof. She related that she began work in June of 1963, and eventually assumed the position of operating the business for the defendant until she entered into a lease therefor on January 1, 1964. In response to a question by her own counsel, she conceded that after she leased the premises she discussed the construction of an auxiliary exit with the defendant, but stated that nothing was done thereafter. On cross examination, the plaintiff was reluctant to admit that she was aware of the danger of a fire hazard existing in view of the single means of egress from the building. The following excerpt from the record emphasizes the laborious nature of the plaintiff’s testimony and the reluctance with which she finally admitted that she knew of the existence of the danger long before she executed the lease for the premises:
“Q But you said before because it was a danger, isn’t that right, you realized the danger when there was only one exit, isn’t that right ?
“A I answered you yes, that I realized it.
“Q And you realized it as far back as 1963?
“A I don’t understand.
“MR. WINKLER:
She answered the question.
“THE COURT:
* * *, sir, she has not answered the question. She has evaded and parried and shadowboxed, but she has not answered the question and she knows what answer he’s trying to elicit as well as you do, I do and everybody on the Jury does, and she’s just evading it. Now, answer the question, did you know that it was dangerous to only have one exit in a building of that type as far back as 1963 ?
“A Yes, sir.
THE COURT:
All right. That’s the answer to the question.”
The only error which the plaintiff points to on the appeal hereof is the trial court’s refusal to charge the jury as follows:
“You are charged that a tenant does not assume the risk nor is a tenant guilty of contributory negligence merely because she knew of the defect in the building or the absence of a safety device. There must be a showing that the defect was so dangerous that the premises could not be used even with the exercise of ordinary care.”
The plaintiff insists that she was prejudiced by the judge’s refusal to give this charge since it was necessary, in her opinion, to counterbalance the charge which the judge gave to the jury with respect to the “assumption of risk”.
It is unnecessary for us to decide the adequacy of the charge referred to herein-above. Assuming arguendo, a view which the plaintiff believes to be most favorable to her, that is, that the trial judge did err in refusing to give her requested charge to the jury, it is obvious that this error would not affect the ultimate conclusion which we are compelled to reach herein. In Louisiana, appellate courts are afforded the constitutional right to review the facts as well as the law in civil cases. In this case, the inability of the plaintiff to recover is so clear, that we would have had to reverse the verdict of the jury if it had returned a verdict in her favor. Therefore, the plaintiff, in the last analysis, could not have been prejudiced by virtue of any error in the trial judge’s omission to charge the jury[2] as per the plaintiff’s request.
*587 Under Louisiana law, the doctrine of “assumption of risk” is applicable to those situations in which the plaintiff, with full knowledge of a danger or peril, freely and voluntarily enters into a relationship with the defendant involving some danger to the plaintiff which may result because of the defendant’s contemplated conduct or actions.[3] The judges of this state have rationalized that such a choice is made by the injured party under circumstances implying consent to relieve the defendant of liability for the proposed conduct and of the duty to protect him therefrom.[4] Thus, the doctrine involves the elements of risk, the knowledge thereof, and the voluntary consent to subj ect oneself thereto.
In this case, the plaintiff’s testimony establishes without equivocation that in June of 1963, when she was employed by the defendant, there existed a risk from fire resulting from the fact that there was only one means of egress from the building. Moreover, she actually was aware of the risk, and voluntarily leased the building from the defendant with full knowledge thereof, thereby subjecting herself to the danger inherent in a building which possessed only one means of escape.
Under these circumstances, the only conclusion which the jury could have legally reached was that the defendants were not responsible for the plaintiff’s injuries since she voluntarily assumed the risk inherent in occupying a building improperly endowed with only one means of egress.
For the foregoing reasons, the judgment of the lower court, predicated upon the jury’s verdict in favor of the defendants, is affirmed.
The plaintiff is to pay all costs incurred herein.
Affirmed.

. By supplemental petition, Leopold Flores was deleted as a party plaintiff essentially for the reason that he had been separated from his wife. Mrs. Flores sought in the supplemental petition all items of special damages incurred herein.

. See Barreca v. United States Fire Insurance Co., 182 So.2d 138 (La.App., 1966) ; LaHitte v. Acme Refrigeration Supplies, Inc., 192 So.2d 172 (La.App. *587 1966), writ refused 250 La. 99, 194 So. 2d 98 (1967), certiorari denied 389 U.S. 821, 88 S.Ct. 44, 19 L.Ed.2d 73 (1967), rehearing denied 389 U.S. 1025, 88 S.Ct. 583, 19 L.Ed.2d 674 (1967); and Duet v. Montagnet, 169 So.2d 561 (La.App., 1964).

. See for example, Laney v. Stubbs, 217 So.2d 468 (La.App.1968).

. Id.